UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MAURICE MAYNARD MEYERS,
                Plaintiff,
    -against-

THE HEALTH AND HOSPITALS
CORPORATION, d/b/a KINGS COUNTY
HOSPITAL CENTER,
                Defendant.
--------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
14-CV-7448 (CBA) (LB)

**AMON, United States District Judge:**

## BACKGROUND

Plaintiff Meyers requests to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C.

§ 1915 for his claims against Health and Hospitals Corporation d/b/a Kings County Hospital

Center. Section 1915(e)(2) requires the Court to do an initial review of the pleadings before

granting leave to proceed IFP. Conducting that review, the Court grants Meyers's request to

proceed IFP but dismisses those of his claims that are frivolous and give no indication that they

might be valid.

## I. Meyers's Litigation History

Meyers is "a very intelligent middle-aged man" who has "long suffered from

schizoaffective disorder and has a history of poor adherence to medication and treatment

regimes." Meyers v. Health & Hosp. Corp., No. 13-CV-1258 (CBA) (LB), 2014 WL 4160796,

at *1 (E.D.N.Y. Mar. 28, 2014), report and recommendation adopted, 2014 WL 4161975

(E.D.N.Y. Aug. 19, 2014). Because of that history, Meyers has been repeatedly involuntarily

committed and forcibly medicated over the past three decades. Id. Since 2009, Meyers

frequently files lawsuits in this District challenging his involuntary commitment and medication,

as well as a large volume of entirely frivolous suits.[1] Meyers's filings are always handwritten and difficult to read, but the Court has liberally construed a number of them over the years and allowed them to proceed.

Most significantly, Meyers's objections to his involuntary confinement and medication were shepherded to a resolution in Meyers v. Health & Hosp. Corp., et al., No. 12-CV-4450. There, the Court liberally construed Meyers's filings as a § 1983 claim bringing constitutional challenges to his involuntary confinement and medication. (12-CV-4450, D.E. # 19.) The Court dismissed his procedural due process claim for failure to state a claim. It explained that "[u]nder New York law an adult has the right to refuse medical treatment except 'in narrow circumstances.'" (Id. at 10 (quoting Kulak v. City of New York, 88 F.3d 63, 74 (2d Cir. 1996)). "To determine whether those 'narrow circumstances' are present for purposes of administering antipsychotic medication without consent, an involuntarily admitted patient, such as Meyers, is entitled to administrative review of his objection . . . . Following exhaustion of this administrative review, the patient is entitled to de novo judicial review, during which the basis for involuntary medication must be established by clear and convincing evidence." (Id. at 10–11.) The Court then explained that the "order of the state court, which authorized the involuntary medication of Meyers following a court hearing, . . . and the other attachments to the Amended Complaint and later submissions make clear [that] defendants adhered to the procedural requirements under New York to administer antipsychotic medication to Meyers over his objection." (Id.) The Court therefore dismissed Meyers's procedural due process claim for

---

[1] Meyers also brought suits against the Social Security Administration, which are not relevant here. The Court twice dismissed such suits for failure to exhaust administrative remedies. (See Meyers v. Social Sec. Admin., No. 09-CV-2701; Meyers v. Social Sec. Admin., No. 11-CV-6046.) Meyers then brought a third suit, Maynard v. Inspector "John Doe" Social Sec. Admin, No. 15-CV-586, but in the interim, the Second Circuit established that failure to exhaust administrative remedies does not require dismissal under IFP review pursuant to § 1915. See Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 385–87 (2d Cir. 2015). The Court therefore granted IFP, and that case is proceeding.

failure to state a claim because "the demands of procedural due process for involuntary medication have been met, and thus no claim under 42 U.S.C. § 1983 for a deprivation of procedural due process has been stated." (Id.)

The Court explained, however, that "[t]he fact that procedural requirements have been followed does not . . . necessarily eliminate all constitutional concerns." (Id. at 11.) "It [was] not clear whether the state court order authorizing medication over objection in this case conforms to the constitutional requirements for finding [] involuntary medication permissible." (Id. at 12.) The Court therefore permitted Meyers's case to proceed as a substantive-due-process challenge, under the new case number 13-CV-1258. (12-CV-4450, D.E. # 24.) The defendants moved to dismiss that action, and the Court referred the motion to the Honorable Lois Bloom, United States Magistrate Judge, for Report and Recommendation ("R&R"). (13-CV-1258, D.E. dated Feb. 7, 2014.)

Judge Bloom recommended that the action be dismissed for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. (See 13-CV-1258, D.E. # 92 at 6.) Under the Rooker-Feldman doctrine, federal courts do not have subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (See id. (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).) Judge Bloom found that (1) Meyers lost in his state-court involuntary-medication proceedings; (2) complained of injuries caused by the state-court judgment, (3) which was entered before his federal suit; and (4) asked the federal court to review that judgment. (Id. at 6–7.) Judge Bloom therefore recommended that the Court dismiss the case for lack of subject matter jurisdiction under Rooker-Feldman. (Id. at 7.)

3

Alternatively, Judge Bloom recommended that defendants' motion to dismiss be granted because Meyers had failed to make out a substantive-due-process claim. (See id. at 7–11.) Judge Bloom recommended that Washington v. Harper, 494 U.S. 210, 221 (1990), in which the Supreme Court established when due process permitted an incarcerated person to be forcibly medicated, be applied to Meyers's civil medication over objection. (See id. at 8–9 (citing Jurasek v. Utah State Hosp., 158 F.3d 506, 511 (10th Cir. 1998) (applying Harper to civil forcible medication); Graves v. MidHudson, No. 04-CV-3957 (FB) (LB), 2006 WL 3103293 (E.D.N.Y. Nov. 2, 2006) (same); Coleman v. State Supreme Court, 697 F. Supp. 2d 493 (S.D.N.Y. 2010) (same, and collecting cases)).) Under Harper's standard, "the Due Process Clause allows a state hospital to forcibly medicate a mentally ill patient who has been found incompetent to make medical decisions if the patient is dangerous to himself or others and the treatment is in the patient's medical interests." (See id. at 9 (quoting Jurasek, 158 F.3d at 511).) Applying this standard, Judge Bloom recommended that "the administration of psychotropic drugs over plaintiff's objection while he was civilly committed did not violate his substantive due process rights." (Id.) She reached this recommendation because "[t]he record reflects that the state court authorized plaintiff's involuntary commitment after it held a hearing and determined that plaintiff lacked the capacity to make a reasoned decision with respect to his treatment and that the administration of anti-psychotic and, if necessary, anticholinergic medications was in the best interest of [plaintiff]." (Id. (internal quotation marks and brackets omitted).) Further, she noted that New York Mental Hygiene Law permits civil commitment only upon clear and convincing evidence that the patient is mentally ill and in need of further care and treatment and the patient poses a substantial threat of physical harm to himself or others. (See id.) The documents Meyers submitted in that case reflected that the state court had

4

followed that procedure and applied those standards. (Id. at 9–10.) Judge Bloom also liberally construed Meyers's filings to bring claims under § 1983 against the individual doctors for violations of his due-process rights, but she recommended those claims too be dismissed. (See id. at 10–11.) She wrote that "[p]laintiff fails to offer any evidence to demonstrate that the Doctors Narasimhan and Kinyamu's professional opinions to medicate him against his will deviated from accepted medical standards" as is required to bring a claim under § 1983. (Id. at 11.) In sum, Judge Bloom recommended that all of Meyers's due-process claims arising from his involuntary commitment and medication be dismissed.

In response to the R&R, Meyers filed 13 largely irrelevant submissions. (13-CV-1258, D.E. # 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105.) Even liberally construed and considered timely, these submissions did not constitute proper objections to the R&R. Nevertheless, in an abundance of caution, the Court considered Judge Bloom's R&R de novo. (13-CV-1258, D.E. # 106.) After de novo review of the issues, the Court adopted Judge Bloom's recommendations and dismissed that case on August 19, 2014. (Id.)

Meyers continues to bring similar and other, wholly irrelevant suits to this Court. See, e.g., In re Meyers, No. 13-MC-572 (CBA), 2013 WL 5502825 (E.D.N.Y. Oct. 2, 2013) (describing actions between 2009 and March of 2013); Meyers v. Office of the Mayor, et al., No. 14-CV-7449 (CBA) (LB), D.E. # 6 (dismissing complaint as bringing allegations that rise to the level of irrational or wholly incredible).) Many have been dismissed as frivolous over the years.

## II.    The Instant Action

Meyers's initial submission under this docket number, received on December 16, 2014, consists of a handwritten Complaint, a letter addressed to the Court, and a copy of documents apparently filed in state court. The handwritten papers are difficult to read, and some sections

are completely illegible. The Complaint is dated "Saturday, December 13, 2014," and states: "On or about 2 or 3 weeks ago . . . Laura Jean Maynard committed a criminal offense. . . . She called 9-1-1 and said psychiatric. The officers of the 70th Precinct escorted myself to Kings County Hospital Center. I was admitted with no evidence presented in the emergency room." (D.E. # 1 at 2.) Meyers states that he had recently been discharged and was "not taking any medicine or medication." (Id.) "Now without any incident report . . . Dr. Kinyamu is requesting medication-over-objection." (Id.) Meyers requests "court-ordered release and certificate of appealability be issued in your court A.S.A.P." (Id. at 3.)

In an attached "Letter to Chief Judge Carol B. Amon," dated "Sunday, 14, 2014 December," Meyers requests that the Court "issue an injunction against future EDP for Colonel Maurice Wayne Maynard Meyers by the NYPD/EMS." (Id. at 4.) He asserts that the current policy for Emotionally Disturbed Persons ("EDP") is illegal and does not protect civil rights. (Id.) It appears that Meyers wants an attorney, Lisa Adams, to present evidence in his state court hearing about his prior federal and state cases. (Id. at 5–6.) He requests: "please have Dr. Kinyamu produce the hospital records in court for examination and cross-examination. The hospital records were not introduced into U.S. federal court hearing 13-CV-1258 because the City lawyer claimed the record did not exist." (Id. at 7.)

Following the letter is a separate document captioned for the Kings County Supreme Court and "Judge Bernard Graham, Part 22, Mental Hygiene." (Id. at 9.) The initial page is not dated, but subsequent pages are dated "Thursday, December 11, 2014," (id. at 11), and "Monday, December 8, 2014," (id. at 12). Meyers requests "the arrest and prosecution of Laura Jean Maynard regarding approximately 50 9-1-1 calls." (Id. at 10.) He describes her as his half-sister. (Id. at 12.) He alleges that "the reason that September 11, 2001 happen[ed] the way it did

is because of Laura Jean Maynard." (Id.) Meyers also alleges: "On February 4, 2001, Robert Richardson conducted a felony assault with a handsaw, electric saw, [illegible] hand axe on [illegible]." (Id.) Meyers describes Richardson as Laura Jean Maynard's "live in boyfriend." (Id.) Meyers also mentions a "power of attorney dated February 18, 2002." (Id. at 11.)

Following that document is a copy of an Order to Show Cause for Medication over Objection, dated December 12, 2014, scheduling a hearing before Justice Bernard Graham for December 16, 2014. (Id. at 13.) "Maurice Maynard" is directed to show cause why an order should not be entered authorizing his involuntary medication. (Id.) The Order to Show Cause is accompanied by copies of a Petition from Dr. Richard Kinyamu and part of an Affirmation from Dr. Helen Smith. (Id. at 16–26.) The Petition from Dr. Kinyamu is dated December 11, 2014, and states that "Maurice Maynard . . . was admitted as a patient to the psychiatric ward of Kings County Hospital Center on December 5, 2014, and is currently on involuntary status." (Id. at 16.) It asserts that the patient has exhausted his administrative remedies. (Id. at 17.) It requests a court order authorizing the administration of antipsychotic medication over patient's objection. (Id. at 19–20.) The undated affirmation from Dr. Smith also indicates Meyers is on involuntary confinement and requests authorization for medication over objection. (Id. at 21–23.)

In a letter dated December 15, 2014, received by the Court on December 19, 2014, Meyers states that his attorney had informed him that "Justice Graham is going to have the medication-over-objection court hearing if I am present or not present, even though the Appellate Division, Second Department, has motion to issue permanent injunction against medication-over-objection hearing on January 5, 2015." (D.E. # 6 at 2.) Plaintiff asks this Court for a "permanent or temporary injunction against Judge Bernard Graham court hearing [illegible] and wait until the Appellate Division Court Hearing Decision." (Id.)

In a subsequent filing, received by the Court on January 9, 2015, Meyers submitted a letter dated December 17, 2014, from Lisa McCabe, Senior Attorney at Mental Hygiene Legal Services. (D.E. # 8.) From the letter, it is clear that Meyers did not appear at the December 16, 2014, hearing, at which the Kings County Supreme Court, Mental Hygiene Part, was to consider his request for discharge from involuntary commitment and Kings County Hospital Center's petition to medicate over objection. (Id. at 1.) In the December 17 letter, McCabe informed Meyers that the December 16 hearing was adjourned until December 23, 2014, but that it would proceed without him, should he fail to appear. (Id.)

On December 22, 2014, the Court received Meyers's letter dated December 18, 2014, requesting that the Court "issue an injunction against court hearing Tuesday-December-2014-22. (D.E. # 4 at 2.) That letter also asks the Court "to order the State of New York and the City of New York to cease and desist forced psychiatric hospital treatment." (Id. at 1.) It mentions "Judge Bernard Graham" and "money under the table." (Id. at 2.) Meyers states that if the judge "issues medication-over-objection court order on Tuesday [I] will have no choice but to physically defend myself [at] the hospital." (Id. at 3.) He also requests: "please issue court order to revoke current NYPD EDP procedure." (Id.)

On January 23, 2015, Meyers submitted a copy of his Notice of Status and Rights – Conversion to Voluntary Status dated December 29, 2015. (D.E. # 9.) The Notice states: "From this point forward, you may stay as a voluntary patient, or be released if you no longer require hospitalization. You may also be converted to involuntary status, but only if you are certified as meeting the requirements for involuntary admission and are unwilling or are no longer suitable to remain in the hospital voluntarily." (Id.) The Notice does not indicate the status of the application to authorize involuntary medication.

8

On December 23, 2014, the Court received a letter dated December 22, 2014, requesting that the Court "suspend Medicaid." (D.E. # 5 at 1.) Meyers mentions $260 billion in payments to hospitals and the "failure to provide adequate health care for New York City residents." (Id.) Conversely, he argues that "New York City has to[o] many hospitals" and that "the level of hospital care be recreated without the automatic payment of Medicaid payments." (Id. at 2.)

On January 5, 2015, the Court received two letters, each dated December 26, 2014. In one, Meyers states: "Governor Andrew Cuomo signed into New York State Law the expansion of Kendra's Law AOT. If I leave the hospital before this law is declared illegal and the entire Kendra's Law program is dismantled [illegible], then it may be impossible to remove this illegal legislation on the books since 1995.[2] It is going into the round-the-clock [illegible] in the courts maybe. . . . It is obvious that it is [illegible] leaving in the public [illegible] and until it is over, I will be [illegible] here in death." (D.E. # 10.) In the other letter, plaintiff requests that Senator Tom Harkin be contacted. That letter requests "a copy of all psychiatric records held by the Secretary of Health and Human Services Department to review for civil litigation in this massive civil [illegible] represented by the Federal Bureau of Investigation" and that "after adjudication in court that all records by the hospitals and the Secretary of Health and Human Services Department be destroyed and expunged in court record if this is possible." (D.E. # 11.)

On January 9, 2015, Meyers belatedly requested to proceed IFP. (See D.E. # 7.)

## III.  Competency Hearing

Under Federal Rule of Civil Procedure 17(c), the Court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is

---

[2] Kendra's Law, codified in New York's Mental Hygiene Law, § 9.60, provides for court-ordered assisted outpatient treatment for certain people with mental illness. It was first enacted in 1999 and subsequently extended in 2005. On January 15, 2013, Governor Andrew Cuomo signed a measure extending Kendra's Law through 2017.

unrepresented in an action." Fed. R. Civ. P. 17(c)(2). When "presented with . . . verifiable evidence from a mental health profession demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent," a district court abuses its discretion if it does not inquire into the party's competency. Ferrelli v. River Manor Health Care, 323 F.3d 196, 203 (2d Cir. 2003). The affidavits submitted by Dr. Kinyamu and Dr. Smith in the state-court action provided evidence of mental disability that could render Meyers incompetent to proceed pro se. (See D.E. # 1.) Therefore those submissions "trigger[ed] a mandatory inquiry into [Meyers's] competency." Ferrelli, 323 F.3d at 202.

On March 4, 2015, the Court respectfully directed Judge Bloom to hold a hearing to consider Meyers's competency to pursue this action without a guardian ad litem. (See D.E. # 12 at 3–4.) Judge Bloom held a video conference with Meyers on April 9, 2015, and on May 20, 2015, found Meyers competent to proceed. (See D.E. # 18.)

## IV. Subsequent Filings

Following the competency hearing and in anticipation of the Court's decision on his request to proceed IFP, Meyers has submitted numerous further submissions.

On July 6, 2015, the Court received a letter dated July 1, 2015, titled "Motion to Reopen Involuntary Admission Status." (D.E. # 21.) In it, Meyers requested an injunction against being transferred to another psychiatric hospital "or further in the psychiatric system." (Id. at 2.) He also stated that he is seeking $800 million and that he wants no medication and is willing to testify in court. (Id.) Attached to this submission is the June 30, 2015, "Application for Involuntary Admission on Medical Certification" pursuant to N.Y. Mental Hygiene Law § 9.27 as well as the "Certificate of Examining Physician" to support an application for involuntary admission by D. Abdul Mohit at Kings County Hospital Center. (Id. at 3–4.) Dr. Mohit attests

10

there that Meyers "has a long history of mental illness" and "multiple psychiatric admission[s],"

"still remains delusional," has "poor insight about his mental illness," "is noncomplian[t] with

his medication since admission," becomes "more delusional, making threatening command[s] at

times while he is in the community," and "needs further inpatient treatment and stabilization"

because "he poses a danger to the community." (Id. at 3–4.)

On July 10, 2015, the Court received a letter dated July 6, 2015, fashioned as an order to

show cause and a motion to reopen. (D.E. # 22.) It states that Meyers, a "Special Agent,

D.E.A.," "comes now to reopen all psychiatric cases." (Id. at 2.) The remainder of the letter is

illegible. Meyers attaches to this letter the July 2, 2015, state-court Order to Show Cause for

Medication over Objection ordering Meyers to show cause on July 14, 2015, why an order

should not be entered authorizing his involuntary medication. (Id. at 3–4.) He also attaches

affirmations from Dr. Paul O'Keefe, Acting Director of Adult Inpatient Psychiatry at Kings

County Hospital Center, and Dr. Helen Smith, an attending physician at Kings County Hospital

Center, in support of a state-court involuntary-medication order. (Id. at 7–8.)

On July 13, 2015, the Court received a letter dated June 28, 2015, labeled as "Exhibit A

to be attached to each of 21 civil law cases" and "Loan Broken Contracts Loss of Income Exhibit

A." (D.E. # 23.) This letter attached a contract for "International Enterprises — Financial and

Business Consultants" located in Rancho Cucamonga, California. (Id. at 3.) On it, Meyers

wrote "President Colonel Maurice Maynard Meyers" and other, illegible phrases. (See id.)

On July 15, 2015, the Court received a letter dated July 9, 2015, "seeking damages from

the New York City Police Department in relation to (A) Project 77 August 28, 1977 to March 3,

1978; (B) psychiatric false (911) [illegible] no on scene investigation by the patrol officer."

(D.E. # 24.) Further it states "false complaint not identified on scene in five boroughs." (Id.)

The body of the letter states: "Plaintiff now comes to take to U.S. Federal Court the New York City Police Department/that [illegible] unknown by the public/ [illegible] into Kendra's Law – [illegible] into psychiatric hospital in the city according to location of (911) psychiatric complaint call / there [illegible] you get my free [illegible] to the psychiatric hospital in New York City if you need to go on [illegible] according to your address. That there is no on scene investigation or on scene report by the N.Y.P.D." (Id. at 2.) For "Project 77/February 4, 2001 to May 30, 2011," Meyers seeks $800 million. (Id.)

On July 15, 2015, the Court received a letter dated July 6, 2015, making a "motion for court order seeking discovery" of "revenue and expenditure of City of New York Governor" and "Office of the Comptroller." (D.E. # 25.) Attached is a letter to Meyers from Comptroller Scott M. Stringer's Community Action Center enclosing two personal-injury and notice-of-claim forms, which Meyers seems to have requested. (Id. at 3.)

Also on July 15, 2015, the Court received a second letter, stating that Meyers "seeks U.S. Federal Court order for the complete reopen of (A.O.T.) assisted outpatient treatment under Kendra's Law, in New York State and New York City, Residents, Court Ordered." (D.E. # 26.)

On August 3, 2015, the Court received a letter dated July 28, 2015, naming the Office of the Comptroller, former NYPD Commission Raymond Kelly, and current NYPD Commissioner William Bratton in its caption. This letter is largely illegible, but refers in places to the NYPD "round-up," "(9-11) Psychiatric telephone," "not allow the patrol officer on the scene to investigate and determine if [illegible]," and "the procedure has been in place"; it concludes, "please issue [illegible] report of Kendra's Law New York." (D.E. # 27 at 2–3.)

Also on August 3, 2015, the Court received a second letter, dated July 29, 2015. (D.E. # 28.) It is labeled a "motion to vacate retention order." (Id. at 1.) It states where legible that

"there is no reason for further retention order" and seeks "notice of claim for $800 million dollars payable to Ms. Janice Maynard." (Id.) It further requests "application to medication-over-objection application seeking Court-order[ed] injunction against [illegible] Kings County Supreme Court [illegible]." (Id. at 2.) The body of the letter writes, among other illegible text, that "the Federal Bureau of Investigations has attempted on more than 3 occasions to deliver to the Judge [illegible]." (Id. at 2.) The third page, dated July 30, 2015, is titled "Application for Expulsion of Government from New York"; it is otherwise almost entirely illegible. (Id. at 3.) Pages four and five are involuntary commitment forms entitled "Notice of Application for Court Authorization to Retain Patient," both dated June 1, 2015, on which Meyers has made copious illegible notes. (Id. at 4–5.)

On December 28, 2015, the Court received a letter entitled a "Motion for Additional Defendant." (D.E. # 31.) In Meyers's handwritten caption to the letter, he adds "New Defendant—Name Dr. Helen Smith, Psychiatrist," writes "Medication-Over-Objection; Administrative Hearing for Transfer to Kingsboro Psychiatrics Center," and states that he seeks "Criminal federal offense for psychiatric malpractice." (Id.) He explains that "Dr. Helen Smith attended the medication-over-objection hearing without the plaintiff and is writing to court [illegible]. I have no idea or what she said at the administrative hearing [illegible] . . . was attended without my consent. . . . Helen Smith attended an administrative hearing to transfer to Kingsboro Psychiatric Center with Dr. Richard Kinyamu. . . . Conspiracy [illegible] behavior unbecoming a practicing medical professional. I ask for no more [illegible] not until I'm [illegible]." (Id.) He "asks Congress for 20 Special Agents — DEA/FBI/OCI/USCCIS/USNCD to investigate [illegible] in the near future with joint task force, need criminal [illegible] for false imprisonment [illegible]."

On January 4, 2016, the Court received a letter containing "Points and Authorities" bearing this case number, but naming the New York State Government Office of the Governor, Attorney General, and New York Assembly as defendants. (D.E. # 29.) It states that "the [illegible] of Kendra's law and the mobilization of the entire New York City Police Department to enforce an illegal [illegible] suspension of the entire New York State Constitution." (Id. at 1.) The body of the letter states that "a T.V. [illegible] 'one in five New Yorkers suffer from a mental problem!' The Qualified Immunity in the New York State Constitution is for not stated directly but indirectly aimed at psychiatric testimony in court. That the constitution United States is suspended because of September 11, 2001. That the New York [illegible] Courtroom because Section 9.41 New York State Mental Hygiene Law into 9.39 – 2 psychiatrist – keep you in the psychiatric hospital is illegal – please issue court-order to suspend the New York State Constitution especially after the exhaustive financial investigation that is about to proceed if court-ordered. You will find that Albany is run by crooks and thiefs of public monies; with no accounting of public disclosure to keep track of what is [illegible] going on in Albany [illegible] Not the Daily News [illegible]."

On January 6, 2016, the Court received a letter labeled "Points and Authorities" listing in the caption Drs. Kinyamu and Smith and dated December 29, 2015. (D.E. # 30.) The letter presents "Points and Authorities" "that the psychiatrist has qualified immunity in the New York Court [illegible]" and seeks "the answer of Dr. Richard Kinyamu for perjury in the Court." (Id. at 1.) It goes on to state that "the plaintiff in anticipation of Kendra's law—he is an DEA special agent assigned to psychiatric investigations [illegible] psychiatrist expert witness testimony out of pocket from April 1994 to current. Dr. Joan Kincade that he told every psychiatrist in the 13 hospitals to call her [illegible] in Washington. They refused to call. Dr. Kincade has not

14

received one official call over the telephone from any psychiatrist one 15 years of being [illegible] by the New York State psychiatric medical industrial complex – enter New Scotland Yard. Please accept the transcript of Dr. Richard Kinyamu testimony to perjured testimony sworn testimony in Kings County Supreme Court. The History shows all perjured testimony. No facts – no witnesses – no police report – just his imaginations. Please call the Federal Bureau of Investigation for the 27 page report forensic [illegible] . . . Please call OSI Office of Special Investigations United States Air Force for the Executive Director Air Force [illegible]." (Id. at 1–2.) Meyers then lists his "main material witnesses"—"(1) Dr. Mingam [illegible] PhD [illegible], (2) Ms. Nicole Lee – social worker, (3) Ms. Melissa Fundyn"—who "were targeted by Health and Hospitals [illegible] because of [their] knowledge and honesty in investigating about the issue of the emergency room admissions and were discharged from [their] respective positions because of [their] knowledge." (Id. at 2.) Meyers writes that he "filed [a] report with the Federal Bureau of Investigation and the Office of Special Investigations–US Air Force. This situation with my three witnesses amounts to federal witness tampering in my civil lawsuits." (Id.) This letter attaches a "Notification of Treatment Override Procedure" from Kings County Hospital Center notifying Meyers that Dr. Helen Smith recommended his treatment over objection after interviewing Meyers on December 28, 2015.

On January 7, 2016, the Court received a letter labeled "Points and Authorities," seeking "medication-over-objection injunction." (D.E. # 32.) Meyers requests "$100 million dollars . . . for all damages [illegible] Kings County Hospital Center for from 2009 to present 2016" for "(1) False (911) cases, (2) false imprisonment in the hospital, (3) false and illegal court testimony in Project 77 – [illegible] Dr. Kinyamu." (Id. at 1.) He writes: "'Call my Doctor in Washington.'" (Id. (emphasis in original).) The body of the letter states "that Attorney Lisa Mc[illegible] is

doing the best she can to help under these mentioned circumstances. That attorney Denis Field is the only — Both of them you [illegible] trust. Lisa will obtain the transcript of Dr. Richard Kinyamu for the Federal Bureau of Investigations/Federal Court Adjudication Kings County Supreme Court – Project 77. [illegible] has no witnesses – all hearsay – false statements. Plaintiff is allowing – verdict – No plaintiff present in Court and please adjudicate in absentia." (Id.) It continues, "Damages include medication-over-objection Court-upon 'Call my Doctor in Washington, D.C.,' She graduated from [illegible] School of Medicine – licenses in New York State – Washington Dr. Expert Witness in Court testimony. One call was officially made to her for her official response by [illegible] since February 4, 2001," "Please [illegible] Dr. Kincade transcribed [illegible] if necessary for Court if audible" "that an 27 page FBI forensic evaluation report of [illegible] years – 2004 – July 10 – Jan – 2009 total full investigation was discarded in K.C.S. Court on 3 occasions." (Id.) The letter then includes a document labeled "Project Funding for Projects Worldwide.docx" with the heading "International Enterprises," which appears to describe the work of a loan-assistance clearinghouse. (Id. at 3–6.) Then the "Points and Authorities" continue, stating "Plaintiff, now comes to December One how he received A.O.T. under Kendra's Law the first time. He told Attorney Bruce [illegible] that he did not want him to represent plaintiff in front of Judge Anthony A. [Cutrond?] that Judge [Cutrond?] [illegible] to the department of sheriff – that plaintiff was there prisoner to Woodhull Mental Health Center – 760 Broadway – Brooklyn New York. Under full FBI surveillance in residence at the Greenpoint Hotel 1109 Manhattan Avenue, Brooklyn, New York 11222 and he was evaluated by Dr. Acdem[illegible] Unit Chief United #5 Woodhull Mental Health Center. Dr. Acemona issues a report that was never introduced into court evidence. No A.O.T. is required. (1) No Alcohol (2) No Drugs (3) No Criminal History. 'Maurice, You do not need A.O.T.' Dr.

16

Joel [illegible] Director of A.O.T. at Woodhull Mental Health Center testified that the reports are not [illegible]. Judge [illegible] never saw the report he ordered. No A.O.T. necessary." (Id. at 2–3.) Under the heading "Attorney [illegible]," Meyers writes, "There was an administrative hearing to transfer to Kingsboro Psychiatric Center. The MHCS[?] Attorney [illegible] to transfer to Kingsboro – doing his [illegible] to cease the administrative hearing decision "Call my Doctor in Washington" [illegible . . .] That [illegible] Plaintiff in medication over objection court order — Plaintiff never attended the hearing – Dr. Helen Smith [illegible] not the plaintiff and an unidentified Doctor – [illegible] Director of Inpatient [illegible]." (Id. at 3.) The remainder of the letter is illegible.

On January 19, 2016, the Court received a letter detailing "Points and Authorities" concerning "evidence of perjury in Court testimony in Project 77/Mental Hygiene that – 'Call My Doctor in Washington' Never Happen." (D.E. # 33.) It explains that "material evidence of Dr. Richard Kinyamu court testimony that he never called my doctor in Washington, D.C., licensed in the state of New York. Check with the F.B.I. – psychiatric investigation for the transcript." (Id. at 1.) This letter attaches a January 12, 2016, letter to Meyers from the law offices of McAloon & Friedman, P.C., notifying Meyers that a bench trial scheduled for Kings County Supreme Court was adjourned to February 8, 2016. (Id. at 2.)

On January 27, 2016, the Court received another letter entitled "Points and Authorities," which is mostly illegible. (D.E. # 34.) It seems to propose a treatment plan that involves the schizophrenia drug Invega and visits from a case worker so that Meyers can "find an apartment and [] find employment." (Id.) Meyers asks the Court to "court-order this program" and to "reopen A.O.T. under Kendra's Law." (Id.) He also requests that his Social Security benefits "can and should be increased in amounts by court-order" to "pay for an

apartment/food/clothes/personal items." (Id. at 2.) He then attaches three pages containing information about the drug "Paliperidone Injection," on which he writes "Invega." (Id. at 3–5.)

Also on January 27, 2016, the Court received a letter titled "Points and Authorities" that seeks "penalties for psychiatric malpractice – insurance psychiatric hospitals in the entire United States that [illegible] there is no [illegible] for criminal behavior by psychiatrists that they to – commit crimes – inside the hospital the legal textbook – psychiatric malpractice." (D.E. # 35.) It requests that Judge Bloom "conduct an investigation for recommendation and report for criminal penalties" for this Court's review, and then mentions Meyers's settlement demand for $110 million. (Id. at 2.) He writes that "Dr. Helen Smith is committing psychiatric malpractice against the plaintiff." (Id.) The remainder of the letter is illegible.

On February 10, 2016, the Court received a letter dated January 29, 2016, which seeks $180 million in damages and states that "plaintiff asserts – nothing is wrong," "plaintiff has no psychiatric [illegible]," "plaintiff attended Georgetown University School of Medicine," and "plaintiff is a colonel in the United States [illegible] since 2007." (D.E. # 36 at 1–2.) This letter attaches a January 29, 2016, state-court Order to Show Cause for Medication over Objection ordering Meyers to show cause on February 2, 2016, why an order should not be entered authorizing his involuntary medication. (Id. at 3–4.) It includes affirmations from Dr. Richard Kinyamu, Acting Director of Adult Inpatient Psychiatry at Kings County Hospital Center, and Dr. Helen Smith, an attending physician at Kings County Hospital Center, in support of a state-court involuntary-medication order. (Id. at 7–8.)

On February 24, 2016, the Court received a filing titled "Points and Authorities" that attaches a Notice of Conversion to Voluntary Status, signed by Meyers and, it appears, Dr. Smith, dated February 19, 2016. (D.E. # 37 at 6.) This filing also encloses two handwritten

letters addressed to Senator Mitch McConnell. The first letter asks that Senator McConnell "please revoke the New York State Constitution and rewrite the New York State Constitution" to, among other things, eliminate qualified immunity and revise the state income and cigarette taxes, especially that on loose cigarettes. (Id. at 2, 4.) It also mentions that Kendra's Law violates international law. (Id. at 3.) The second letter requests Senator McConnell investigate qualified immunity and the Rooker Feldman doctrine. (Id. at 5.) The Court received a letter making similar requests on February 29, 2016. (D.E. # 39.)

On February 29, 2016, the Court also received a letter titled "Points and Authorities" that attaches the September 15, 2015, order after hearing of the Honorable Carolyn E. Wade, Kings County Supreme Court, granting Kings County Hospital's application for Meyers's involuntary commitment for up to six months. (D.E. # 38.)

On March 30, 2016, Meyers made a second IFP application. (D.E. # 41.)

On April 4, 2016, the Court received the latest filing in the docket, a letter similar to earlier ones seeking a court-ordered release from the hospital and $300 million. (D.E. # 40.)

## STANDARD OF REVIEW

When considering a motion for leave to proceed IFP, the Court conducts an initial review of the pleadings. 28 U.S.C. § 1915(e)(2). In evaluating the sufficiency of the pleadings, the Court must accept as true all factual allegations and draw all inferences in the plaintiff's favor. See Larkin v. Savage, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam). Pleadings submitted pro se, like Meyers's, are held to a less stringent standard and must be liberally construed and interpreted to raise the strongest arguments they suggest. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

19

Nevertheless, under § 1915(e)(2)(B), the Court must dismiss pleadings that make frivolous allegations, fail to state a claim, or seek damages against an immune defendant. Even pro se pleadings must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). Additionally, § 1915 "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32–33 (1992). Although courts will grant leave to amend where a pro se pleading "gives any indication that a valid claim might be stated," Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), "leave to amend a complaint may be denied when amendment would be futile," Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006).

## DISCUSSION

As should be apparent from the summary above, it is only by liberal construction that the Court is able to draw out any discernible claims for relief from Meyers's many filings on this docket. Interpreted to "raise the strongest arguments that they suggest," Triestman, 470 F.3d at 472, Meyers's filings challenge: (1) his involuntary commitment and medication over objection; (2) the constitutionality of Kendra's Law; (3) the constitutionality of New York City's EDP policy; and (4) the actions of Drs. Kinyamu and Smith as malpractice. The Court addresses each claim below, as well as miscellaneous requests made sporadically in Meyers's filings.

### I. Involuntary Commitment and Medication over Objection

Meyers's filings can be interpreted to challenge both his involuntary commitment and his medication over objection. Meyers may currently be involuntarily committed at Kings County

20

Hospital Center, (see D.E. # 36 at 3), and in a number of his filings he objects to his medication over objection, (see, e.g., D.E. # 32 (seeking a "medication-over-objection injunction")). The process by which New York involuntarily commits and medicates patients has been held to meet "the minimum facial requirements of due process—both substantive and procedural." Project Release v. Prevost, 722 F.2d 960, 971 (2d Cir. 1983) (rejecting substantive and procedural due-process challenge to involuntary commitment and medication over objection under New York law); see also Rodriguez v. City of New York, 72 F.3d 1051, 1062 (2d Cir. 1995) ("New York's overall statutory scheme governing involuntary commitments has been held facially sufficient to meet the requirements of due process."); Olivier v. Robert L. Year Mental Health Ctr., 398 F.3d 183 (2d Cir. 2005) (same). Therefore if defendants followed the procedures set forth by the New York statutes, due process has been satisfied. See Bryant v. Steele, 25 F. Supp. 3d 233, 247 (E.D.N.Y. 2014) (dismissing due-process challenge where plaintiff did not allege that statutory requirements had not been followed);Capellupo v. Nassau Health Care Corp., 06-CV-4922 (JFB) (ETB), 2009 WL 1705749, at *7 (E.D.N.Y. June 16, 2009) ("[I]f defendants' actions comported with the strictures of the New York Mental Hygiene Law, they also satisfied the requirements of procedural due process.").

The New York statutes permitting involuntary commitment and medication over objection contain many procedural safeguards, which the Court only summarizes here. New York's involuntary commitment scheme requires: "(a) involuntary commitment only if care and treatment in a hospital is essential to the individual's welfare, M.H.L. § 9.01; (b) [the] certifying physicians to consider less restrictive alternatives to hospitalization, id. § 9.27(d); . . . (c) certification by three physicians that the individual's judgment is so impaired that he fails to understand the need for involuntary care and treatment, id. §§ 9.01, 9.27"; and (d) a "showing

21

of dangerousness." Project Release, 722 F.2d at 972. A patient objecting to medication is entitled to administrative review of his objection, which includes review by the "head of the service" and subsequent appeals up the hospital hierarchy. See N.Y. Comp. Codes R. & Regs. tit. 14, § 27.8; see also Fisk v. Letterman, 501 F. Supp. 2d 505, 515 (S.D.N.Y. 2007) (describing New York's medication-over-objection procedure). Following exhaustion of this administrative review, the patient is entitled to de novo judicial review, during which the basis for involuntary medication must be established by clear and convincing evidence. See Rivers v. Katz, 67 N.Y.2d 485, 497 (1986) (describing process); Fisk, 501 F. Supp. 2d at 515 (same).

Meyers does not allege that he has not received the process prescribed by the statutes for involuntary commitment or forcible medication. To the contrary, the documents included with his filings demonstrate that he received or is currently receiving this process. Dr. Kinyamu's affidavit in support of the January 28, 2016, Order to Show Cause for Medication over Objection states that Dr. Kinyamu examined Meyers as part of the administrative review of his objection. (See D.E. # 36 at 7.) And the Order to Show Cause itself makes clear that Meyers is currently receiving, or has received, judicial review. See Jelich v. Hogan, No. 09-CV-3278 (BMC), 2009 WL 3497495, at *3 (E.D.N.Y. Oct. 27, 2009) (holding that because "the administration of medication over plaintiff's objection has been authorized by court order," "it appears that plaintiff does not state a due process claim under 42 U.S.C. § 1983"). The Application for Involuntary Admission on Medical Certification pursuant to § 9.27, attached to one of Meyers's submissions, demonstrates that the process for involuntary commitment is also being followed. (See D.E. # 21 at 3–8.) Meyers's filings therefore make plain that he has received and is receiving New York's constitutionally sufficient safeguards.

Additionally, insofar as Meyers challenges ongoing state-court proceedings, this Court must abstain from intervening in them. See Younger v. Harris, 401 U.S. 37, 43–45 (1971) (holding that federal courts should in general refrain from enjoining or otherwise interfering with ongoing state proceedings). And if the state-court proceedings have concluded and the state court has authorized Meyers's involuntary medication or commitment, the Rooker-Feldman doctrine bars this Court's consideration of any such challenge. (Cf. 13-CV-1258, D.E. # 92 at 5–7.)

These claims are therefore dismissed for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Further, because Meyers's own filings demonstrate that such claims could not be validly stated, leave to amend is denied. See Cuoco, 222 F.3d at 112; Tocker, 470 F.3d at 491.

## II.    Kendra's Law

Meyers's filings can also be interpreted to challenge the constitutionality of "Kendra's Law," i.e. New York Mental Hygiene Law § 9.60. (See, e.g., D.E. # 10 at 1, D.E. # 26 at 1, D.E. # 27 at 2–3, D.E. # 29 at 1, D.E. # 32 at 2–3.) Kendra's Law authorizes court-ordered assisted outpatient treatment ("AOT") for certain individuals with mental illness, following specific criteria and procedures. Because court-ordered AOT under New York law, like involuntary commitment, requires a state-court order, see N.Y. Mental Hyg. Law § 9.60(e)–(k), a challenge to that state-court order authorizing Meyers's AOT would be barred by the Rooker-Feldman doctrine or, if currently ongoing, by Younger abstention. (Cf. 12-CV-1258, D.E. # 92 at 5–7.) However, a facial challenge to the constitutionality of the statute itself would not be so barred. See, e.g., Coleman, 697 F. Supp. 2d 493 (considering the facial constitutionality of Kendra's Law notwithstanding Rooker-Feldman). Liberally construed, Meyers's filings make out such a

claim. Although Meyers has named a number of improper defendants, the Court liberally construes his claim as being brought against the proper defendant: the Commissioner of the New York State Office of Mental Health, Ann Marie T. Sullivan, in her official capacity. See, e.g., Mental Disability Law Clinic v. Hogan, 06-CV-6320 (CPS) (JO), 2008 WL 4104460 (E.D.N.Y. 2008) (considering an equal-protection challenge to Kendra's Law brought against the Commissioner of the New York State Office of Mental Health). The Court grants Meyers's request to proceed IFP with respect to this claim.

### III. New York City's EDP Policy

Meyers's filings can also be interpreted to challenge New York City's policy for handling emotionally disturbed persons. For example, he asks the Court to "issue an injunction against future EDP for Colonel Maurice Wayne Maynard Meyers by the NYPD/EMS." (D.E. # 1 at 4.) His fundamental complaint seems to be that police officers bring EDPs to the emergency room in response to 9-1-1 calls with insufficient process. He states that officers bring EDPs to the emergency room "with no evidence," (id. at 2); with "no on scene investigation by the patrol officer," (D.E. # 24 at 1); and without any "on scene report," (id. at 2). (See also D.E. # 27 at 2–3 (making similar allegations).) Based on these allegations, Meyers asserts that the current EDP policy is illegal and does not protect civil rights. (D.E. # 1 at 2.)

Interpreted to make out the strongest claim they suggest, Meyers's EDP arguments bring a § 1983 claim against the City of New York for its allegedly unconstitutional policy concerning the NYPD's interactions with EDPs. Liability under § 1983 attaches to a municipality only where the unconstitutional action implements an official policy or custom. See Jenkins v. City of New York, 478 F.3d 76, 93–94 (2d Cir. 2007) (citing Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978)). Meyers's statement that the current EDP policy violates civil

24

rights is sufficient at this stage to bring a § 1983 claim against the City of New York. Cf.

Cerbelli v. City of New York, No. 99-CV-6846 (ARR) (RML), 2008 WL 4449634, at *12

(E.D.N.Y. Oct. 1, 2008) (considering a challenge to New York City's EDP policy under Monell).

Additionally, Meyers names NYPD Commissioner William Bratton as a defendant in his

July 28, 2015, letter to the Court. (D.E. # 27 at 2–3.) Insofar as Commissioner Bratton is a final

policymaker for the NYPD, his decisions can constitute government policy or custom under

Monell. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); see also Anthony v. City

of New York, 339 F.3d 129, 139 (2d Cir. 2003). He is therefore a proper defendant for Meyers's

§ 1983 claim based on New York City's EDP policy.[3]

The Court grants Meyers's request to proceed IFP with respect to this claim against New

York City and NYPD Commissioner Bratton.

## IV.    Malpractice

In his more recent filings, Meyers alleges malpractice against Drs. Kinyamu and Smith.

Meyers alleges "[c]riminal federal offense for psychiatric malpractice," (D.E. # 31 at 1);

"behavior unbecoming a practicing medical professional," (id.); and, elsewhere, requests

"penalties for psychiatric malpractice," (D.E. # 35 at 1). The Court liberally interprets such

statements to bring § 1983 claims and state-law malpractice claims. To be liable under § 1983, a

doctor must have made a decision that was "such a substantial departure from accepted

judgment, practice, or standards as to demonstrate that he actually did not base the decision on

such a judgment." Kulak, 88 F.3d at 75 (citing Youngberg v. Romeo, 457 U.S. 307, 323 (1982)).

"Under New York law, a medical malpractice plaintiff must establish (1) the standard of care

where the treatment occurred, (2) that the defendant breached the standard of care, and (3) that

---

[3] Meyers also names former Commissioner Raymond Kelly, but since he requests "an injunction against future EDP," (D.E. # 1 at 4), the current NYPD commissioner is presumably the proper policymaker defendant.

this breach proximately caused the injury." <u>Hogan v. A.O. Fox Mem'l Hosp.</u>, 346 F. App'x 627, 630 (2d Cir. 2009) (citing <u>Texter v. Middletown Dialysis Ctr., Inc.</u>, 803 N.Y.S.2d 687 (2d Dep't 2005)).

Meyers's claims against the physicians are dismissed for failure to state a claim. Under both § 1983 and state law, malpractice claims revolve around a medical decision that deviated from accepted standards. But Meyers does not allege any facts concerning deficient decisionmaking from these doctors. Rather, he objects to their participation in his medication over objection and involuntary commitment. For example, Meyers alleges that Dr. Smith attended the medication-over-objection hearing without him and that both doctors attended an administrative hearing concerning his possible transfer to another institution. (D.E. # 31 at 1.) He objects that he "[had] no idea [] what [Dr. Smith] said at the administrative hearing" and that Dr. Smith "is writing to the court." (<u>Id.</u>) These are not allegations of malpractice. Rather, they simply redirect Meyers's objections to his involuntary commitment and medication toward the doctors who participated in this decision, as required by New York law (and due process).

Because Meyers fails to state a claim with respect to Drs. Smith and Kinyamu, his claims against them are dismissed. 28 U.S.C. § 1915(e)(2)(B). Additionally, because Meyers's pleadings do not give any indication that a valid claim under state malpractice law or § 1983 might be stated, leave to amend is denied. <u>See</u> <u>Cuoco</u>, 222 F.3d at 112; <u>Tocker</u>, 470 F.3d at 491.

## V.     Miscellaneous Requests

Meyers's filings also make a number of requests that even liberally construed do not give any indication that a valid federal claim might be made.

First, he requests the initiation of a number of criminal proceedings: against his half-sister, for calling 9-1-1 on him, (D.E. # 1 at 12); against Robert Richardson, apparently his half-

sister's boyfriend, for felony assault, (D.E. # 1 at 10), and against Drs. Smith and Kinyamu for perjury, (D.E. # 30 at 1, D.E. # 33 at 1). The Court does not have jurisdiction to conduct criminal investigations or initiate criminal charges. See Alia v. Saadat, No. 13-CV-663S, 2013 WL 5924505, at *3 (W.D.N.Y. Oct. 31, 2013). Nor may private parties in a federal lawsuit initiate criminal prosecutions. See Leeke v. Timmerman, 454 U.S. 83, 86 (1981) (per curiam) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." (internal quotation marks and citation omitted).)

Second, Meyers requests an injunction against being transferred to another psychiatric hospital "or further in the psychiatric system." (D.E. # 1 at 2.) None of Meyers's many subsequent filings suggests that he is currently being considered for a transfer from Kings County Hospital Center. No further allegations address this claim for relief or elaborate on Meyers's entitlement to it.

Third, Meyers requests that the Court "suspend Medicaid." (D.E. # 5 at 1.) None of Meyers's allegations refer to the Medicaid program or its administration, nor do they suggest any plausible federal claim that might be brought concerning Medicaid.

Fourth and finally, some of Meyers's filings suggest some sort of contract claim—for example, his letter dated June 28, 2015, includes a contractual document that Meyers labels "Loan Broken Contracts Loss of Income." (See D.E. # 23.) None of Meyers's allegations refer to a breach of contract, however, nor do any explain how such a breach might relate to the federal claims advanced here.

Each of these claims is dismissed for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and, because Meyers's pleadings do not give

any indication that these claims might be validly stated, see Cuoco, 222 F.3d at 112, leave to amend is denied, see Tocker, 470 F.3d at 491.

## CONCLUSION

Meyers's request to proceed IFP is granted with respect to his challenges to Kendra's Law and New York City's EDP policy. Those claims may proceed. The Clerk of Court is respectfully directed to substitute the following parties as defendants in this action: Ann Marie T. Sullivan, Commissioner of the New York State Office of Mental Health, in her official capacity; the City of New York; and William Bratton, Commissioner of the New York Police Department, in his official capacity. The United States Marshals Service is respectfully directed to serve the summons and complaint upon these defendants without prepayment of Meyers's fees.

Meyers's other claims are dismissed as frivolous or for failure to state a claim pursuant to § 1915(e)(2)(B), and pursuant to Tocker, 470 F.3d at 491, leave to amend those claims is denied.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore IFP status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: May  18 , 2016
      Brooklyn, New York

                                    /S/ Judge Carol Bagley Amon
                                    Carol Bagley Amon
                                    United States District Judge

28